MICHAEL COLESAR, Defendant in Error, *vs.* THE STAR COAL COMPANY, Plaintiff in Error.

*Opinion filed October 26, 1912.*

1. TRIAL—*when a peremptory instruction is properly refused.* An instruction to find the defendant in an action for personal injury not guilty is properly refused if there is any evidence fairly tending to prove the material allegations of the declaration, and the fact that such evidence is contradicted by the evidence for the defendant does not authorize the giving of the instruction.

2. SAME—*plaintiff not bound to prove every count of declaration.* The plaintiff in a personal injury case may charge different acts of negligence in different counts of the declaration as the cause of the injury alleged, but he is not required to prove each count in order to entitle him to a verdict, as he is entitled to recover if one count is sufficient and the proof supports it.

3. SAME—*when admission of X-ray plates is harmless error.* The admission of X-ray photographic plates in evidence is error where the evidence of the expert witness who made the plates and who testified as to what they disclosed shows that the plates would be unintelligible to the jury, but under such conditions the error is not of prejudicial character.

4. SAME—*expert may testify as to what X-ray photograph discloses.* Where it is shown on the trial that the condition plaintiff was in could have been caused by a stone in the kidney, a properly qualified expert who has made X-ray photographs of the plaintiff may state what he found as the result of his examination and whether or not there was a stone in plaintiff's kidney.

5. SAME—*when failure of instruction to correctly quote provision of statute is not fatal.* Failure of an instruction to correctly quote a provision of the statute is ground for its refusal, but the giving of the instruction is not ground for reversal where the misquotation does not change the meaning of the provision nor tend to mislead the jury.

6. APPEALS AND ERRORS—*objections to instructions not urged in the Appellate Court are waived.* Objections to instructions which were not urged in the Appellate Court are deemed to have been waived or abandoned and cannot be urged in the Supreme Court.

7. SAME—*remittitur not binding after allowing unrestricted rehearing.* The filing of a *remittitur,* as required by the judgment of the Appellate Court, before the allowance by that court of an unrestricted rehearing, does not preclude the Appellate Court from thereafter affirming the judgment below for the full amount, as the allowance of the rehearing vacates the first judgment of the Appellate Court, and the case stands, pending the rehearing, as though such judgment had not been entered.

CARTWRIGHT, J., DUNN, C. J., and HAND, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. S. C. STOUGH, Judge, presiding.

The defendant in error brought his action on the case against the plaintiff in error in the circuit court of LaSalle county to recover for personal injury. Judgment for $10,000 was recovered in the circuit court, which, on appeal to the Appellate Court for the Second District, was affirmed in the sum of $6500 after defendant in error had entered a *remittitur* of $3500. A petition for rehearing was allowed by the Appellate Court, and upon the rehearing the judgment of the circuit court was affirmed in the sum of

$10,000. The cause has been removed to this court by writ of *certiorari*.

In the circuit court, after various amendments to the declaration, the cause was submitted to the jury upon the three counts of the amended declaration, the second, third, fifth and sixth additional counts and the second further and additional count, to each of which the plea of not guilty was interposed. The first count of the amended declaration charges a willful violation of the statute, and after alleging the employment of defendant in error in the coal mine operated by plaintiff in error and the fact that he entered the mine for the purpose of pursuing his labors there on the morning of the day of the accident, it alleges that it was the duty of plaintiff in error, under the statute, to visit the mine before the men were permitted to enter, to see that the air current was traveling in its proper course and in proper quantity, to determine the quantity of air in different portions of the mine, to measure with an instrument the amount of air passing in the last cross-cut or break-through of each pair of entries or in the last room of each division of plaintiff in error's long-wall mine, and to note the condition of the mine in a book kept for that purpose, before the men employed were allowed to enter the shaft; that plaintiff in error, regardless of its duties in that behalf, then and there willfully neglected and failed to enter its said mine or shaft on the day aforesaid before its coal miners and company men were permitted to enter, and willfully, negligently and carelessly failed to examine the condition of its said mine on the day aforesaid, and to make a record in a certain book kept by the defendant for that purpose, of the condition of its said mine on the day aforesaid before the defendant's coal miners and company men entered said shaft, in violation of the statute, in consequence of which willful negligence and misconduct of the plaintiff in error the air current in a certain passageway through which defendant in error was passing was not

traveling in its proper course, and as a result thereof there was a dangerous accumulation of gases, which became ignited, whereby an explosion was caused and defendant in error was injured. The second count of the amended declaration also charges a willful violation of the statute in substantially the same language as the first count, except that it alleges that because of the failure of plaintiff in error to do the things required by the statute the air current in said roadway or passageway was not traveling in a proper quantity, as a result of which the injury was sustained. The third count of the amended declaration is similar to the first, and charges that the plaintiff in error willfully neglected to inspect the mine and note the condition in a book kept for that purpose; that there was a recent fall or hole in the roof of the mine above a roadway, which emitted or generated gases, which condition plaintiff in error failed to note in the book, thereby causing a dangerous accumulation of gases, which were ignited, causing an explosion, whereby the defendant in error was injured. The second, third, fifth and sixth additional counts, and the second further additional count, each charge common law negligence.

The mine of plaintiff in error was operated by the long-wall system and was circular in form, the face of the coal at all points being nearly equally distant from the bottom of the shaft. The vein of the coal was from two and one-half to three feet thick, and it was necessary to take down two feet or more of the shale overhanging the coal in the entries to obtain a sufficient height to move the cars. This rock, together with other refuse, was piled in the spaces between the entries and formed a support, upon which the roof of the mine settled as the coal was taken out. Black slate overlaid the stratum of shale rock immediately above the coal, and in settling down upon the supports formed by the shale rock and other refuse placed between the entries the roof of the mine frequently cracked,

and these fissures frequently extended up into the black slate. As a result of the cracking of the roof of the mine portions of it frequently fell, and gas also came into the mine from the black slate, through these cracks. The proof tends to show that the flow of this gas was sometimes constant, at other times intermittent, and that it frequently disappeared entirely in a few days' time. When this gas is pure it will not explode, but when mixed one part of gas with from seven to eleven parts of air it is explosive. Prior to the time of the accident the air current used in ventilating the mine passed through a certain entry-way then used in the operation of the mine. About two months before the accident occurred a section of the roof in this entry-way fell, leaving a hole about four feet in height in the middle, with its sides sloping down from the highest point to the natural roof, the hole being about ten or twelve feet long and five feet in width. Immediately after the fall of rock this hole was timbered, and in a short time gas was discovered there, and a canvas curtain was hung across the entry beneath the hole so that the air current would be deflected up into the hole and take out the gas. On the morning of November 14, 1907, defendant in error entered the mine between 6:30 and 6:50 o'clock, passing underneath this curtain on his way to his working place. Immediately following him was another miner, who kept his tool box at the side of the entry near the curtain. This miner stepped upon some dirt at the side of the roadway and reached up into the hole over the curtain to secure the key to his tool box from above one of the timbers. He had an ordinary miner's lamp in his cap, and as he reached up into the hole an explosion occurred, which resulted in the injury complained of.

As grounds for reversal plaintiff in error urges (1) that the trial court erred in not giving its peremptory instruction offered at the close of plaintiff's case and again at the close of all the evidence; (2) that improper evidence was

admitted over its objection; (3) that the trial court erred
in refusing to give the several instructions for a directed
verdict as to each count of the declaration; (4) that im-
proper instructions were given on behalf of the defendant
in error; (5) that the court improperly refused to give
plaintiff in error's instruction No. 32; (6) that the Appel-
late Court erred in affirming the judgment of the circuit
court for $10,000 after defendant in error had entered a
*remittitur* of $3500 prior to the granting of the rehearing.

Boys, Osborn & Griggs, for plaintiff in error.

Lucey & Larkin, and Duncan, Doyle & O'Conor,
for defendant in error.

Mr. Justice Cooke delivered the opinion of the court:

Plaintiff in error first contends that the evidence of
defendant in error, together with the justifiable inferences
to be drawn therefrom, wholly fails to establish a cause of
action under any of the counts on which the case was sub-
mitted. The first amended count charged that by reason
of the failure of the plaintiff in error to comply with the
statutory requirements the air current was not traveling in
its proper course. The second count charged that by rea-
son of the same failure the air current was not traveling
in a proper quantity. The third count charged that the
plaintiff in error failed to note in the book provided for by
the statute, the existence of gas in the hole in question.
There is proof in the record tending to support each of
these counts. For ten days prior to the accident Joseph
Morgan was employed as mine examiner in this mine. On
the night of November 13 and the morning of Novem-
ber 14, 1907, he examined the mine and made a written
report of the conditions as found by him. He made no
report as to gas in this hole and testified that he discovered

none. He did not indicate by any marks at its location that the hole was in a dangerous condition. The report was made on a printed form, certain blanks being filled in, and was signed by the examiner. Morgan testified that he had no independent recollection of what he did on that night during his examination of the mine, and relied wholly upon what was shown from his report. The testimony on behalf of defendant in error tended to prove that there had been gas in this hole shortly before the explosion, and that there was gas in the hole at the time, which caused the explosion, is apparent and is not denied. Prior to the employment of Morgan, Frank Hughes had been the mine examiner of this mine, and he testified that the curtain had been put up at this hole because of the presence of gas therein, and that he placed danger signals at the curtain. He also testified that it was necessary to renew those marks at least once a week, owing to the damp condition of that portion of the mine and of the dirt and dust in that entry, which obliterated the marks. Morgan did not renew these marks or signals, and did nothing during the ten days prior to November 14, 1907, when he was acting as mine examiner, to indicate the presence of gas in this hole. There is also evidence tending to prove that there had been falls of rock in the course of the air current shortly prior to the time of the accident, which tended to prevent the air from traveling in its proper course, and there is also evidence that immediately preceding the time of the accident the air current was weak and not traveling in proper quantity. This evidence is contradicted by the testimony of witnesses on behalf of plaintiff in error, and it relies upon this contradiction as having successfully refuted the testimony offered on behalf of defendant in error. We cannot weigh the evidence or determine on this review upon which side the evidence preponderates. If there is any evidence tending to prove the material allegations of defendant in error's declaration the peremptory instruction was properly

refused.  We find that there is such evidence in the record and the case was properly submitted to the jury.

.  The second ground of complaint is based on the admission of the testimony of Dr. Hatheway.  The proof tended to show that as one of the results of the injuries received by defendant in error there was blood and pus present in the urine.  Expert witnesses testified that this might be due to a stone in a kidney, and that as this condition was present so soon after the accident it could not have been due to such a stone produced by the accident.  Dr. Hatheway was employed by defendant in error to take X-ray plates of his body from the chest down, to and including the pelvis.  Dr. Hatheway qualified both as a medical expert and as an expert in the use and operation of X-ray machines, and testified to an extensive experience with taking photographs by the X-ray process and making examinations by this process for the purpose of determining physical conditions.  He testified that in order to examine the plates or negatives prepared in this case he used an illuminating box which illuminated the plates, and that it was not possible to make an examination of the plates and determine what they represented without the illuminating box.  He testified further that the purpose of making a certain plate, which was marked as an exhibit, was to determine if there was any stone present, and that the plate showed that there was no stone.  Referring to another of the plates, which was likewise marked as an exhibit, the witness testified that no one but an expert could take the plate and tell what it was and that without the assistance of the illuminating box no one could determine what conditions were shown.  The plates were then admitted in evidence over the objection of plaintiff in error, and this action of the court, together with permitting the witness to testify that one of the plates showed that there was no stone present, is urged as error.  Having qualified as an expert it was proper for him to state what he found as a result of his examination and to state

whether or not there was a stone present in the kidney of defendant in error. Under the state of the record the two X-ray photographic plates ought not to have been admitted in evidence, as from the evidence of this witness they would be unintelligible to the jury. This error, however, was harmless, as the witness testified that the plates disclosed nothing whatever except when examined by the use of the illuminating box. We do not regard this error of such a prejudicial character as to warrant a reversal of the case.

It is next urged that the several motions for a directed verdict as to each count of the declaration should have been allowed. As has been pointed out, the three counts alleging a willful violation of the statute were supported by the evidence. It may be conceded that some of the counts alleging common law negligence were not supported by the evidence, but even under this situation the action of the court in refusing to give the peremptory instructions as to such counts does not constitute reversible error. It is allowable to charge different acts of negligence, in different counts of the declaration, as the cause of the injury alleged, and the plaintiff is not bound to prove each count of the declaration in order to entitle him to a verdict, and he may recover if one count is sufficient and the proof supports that count. *Scott* v. *Parlin & Orendorff Co.* 245 Ill. 460.

Under the fourth contention made we will consider two of the points raised. The first instruction given on the part of defendant in error directed the jury that at the time in question there was in force in this State a provision of law in reference to coal mines in words as follows: "A mine examiner shall be required at all mines. His duty shall be to visit the mine before the men are permitted to enter it, and first he shall see that the air current is traveling in its proper course and in proper quantity. In order to correctly determine the quantity of air in circulation in different portions of the mine it is hereby made his duty to measure with an instrument for that purpose, the amount

of air passing in the last cross-cut or break, through each pair of entries or in the last room of each division in a long-wall mine, and at all other points where he deems it necessary, the same to be noted in the daily book kept for that purpose;" and concluded by stating that though they might believe that defendant in error was negligent in not refusing to pass through the entry-way in question, nevertheless if they believed, from the evidence, that he was injured and sustained damages as alleged in the declaration, and that such injury and damages were occasioned by the willful failure of plaintiff in error to comply with the provisions of law therein above set forth, they should find it guilty, etc. It is urged that the attempted quotation from the statute is incorrect and that the instruction is bad for that reason. The statute provides that the mine examiner shall determine the quantity of air in circulation, and shall measure with an instrument provided for that purpose, "the amount of air passing in the last cross-cut or break-through of each pair of entries." The instruction quotes that statute as requiring a mine examiner to measure "the amount of air passing in the last cross-cut or break, through each pair of entries." In the quotation the word "of" is omitted and a comma is placed after the word "break." Generally speaking, when a party, in an instruction offered, purports to quote verbatim a provision of the statute he must quote it correctly or the instruction must be refused. The failure to quote the statute correctly in this instruction could not have misled the jury as it did not in anywise change its meaning, and the instruction is not bad for that reason.

It is further contended that this instruction is erroneous in that it authorizes the jury to find for the defendant in error if they believe the injury was "occasioned by the willful failure on the part of the defendant to comply with the foregoing provisions of law above set forth in the instruction." The basis of this contention is, that there is no

complaint made in the pleadings of the failure of the mine examiner to measure the air currents and to record the same in a daily book kept for that purpose, and that the instruction is bad as authorizing a recovery upon grounds not complained of. The first and second counts of the amended declaration allege that by reason of the failure of plaintiff in error to make the examination required by the statute and to note the condition of the mine in a book kept for that purpose the air current was not traveling in its proper course or in proper quantity, thereby causing the accident. This instruction was proper to be given under these counts and the proof made.

The giving of instruction No. 10 is complained of, on the ground that it permitted the jury to consider the question of permanent injuries, whereas plaintiff in error contends that no permanent injuries have been shown. There is evidence in the record which tends strongly to prove that defendant in error is injured permanently, and this instruction is not open to that objection.

Objections are made to the giving of instruction No. 9, and further objections are also made to the giving of instructions Nos. 1 and 10. By leave of court the brief filed by plaintiff in error in the Appellate Court has been filed here, from which it appears that these objections were not urged in that court. This appeal brings before us only such errors as were urged in the Appellate Court. Those not urged or brought to the attention of the court will be held to have been waived and abandoned and cannot be raised in this court for the first time. *Strodtmann* v. *County of Menard*, 158 Ill. 155; *Central Union Building Co.* v. *Kolander*, 212 id. 27; *Reisch* v. *People*, 229 id. 574.

The action of the court in refusing to give plaintiff in error's instruction No. 32 is complained of. This instruction was faulty in some particulars but the essential elements of the instruction were incorporated in other instructions given, and it was properly refused.

It is finally urged that it was error for the Appellate Court to affirm the judgment of the circuit court, on rehearing, in the full sum of $10,000 after the filing of a *remittitur* by defendant in error in the sum of $3500 before the application for rehearing. The rehearing granted by the Appellate Court was without any restrictions and operated to vacate the judgment entered in that court, so that, pending the rehearing, the cause stood as if no judgment had ever been entered. (*Lipscomb* v. *Grubbs,* 3 Bibb, 393; *Sterritt* v. *Lockhart,* 7 J. J. Marsh. 554; *Hook* v. *Mercantile Trust Co.* 95 Fed. Rep. 41.) The granting of a rehearing had the same effect as the granting of a new trial in the trial court. Where a *remittitur* has been entered in the trial court it does not operate as a waiver of any part of the damages claimed after a new trial has been granted. As was said in *Planters' Bank* v. *Union Bank,* 83 U. S. 483: "It is further assigned for error by the defendants that the court allowed the plaintiffs to withdraw a *remittitur* entered by them of a part of a verdict obtained on a former trial of the case. The only objection made in the court below to the allowance was that the *remittitur* was an acknowledgment of record that the amount remitted was not due. There had been a former trial, in which the plaintiffs had obtained judgment for $113,296.01, with five per cent interest from November 25, 1863. This was a larger amount of interest than the petition of the plaintiffs had claimed, and they entered on the judgment a *remittitur* of the excess, expressly reserving their rights to the balance of the judgment. Subsequently a new trial was granted, and it is now contended that the *remittitur* had the effect of a *retraxit.* As it was entered after judgment, such would, perhaps, be its effect if the judgment itself had not been set aside and a new trial had not been granted, (*Bowden* v. *Horne,* 7 Bing. 716,) but such cannot be its operation now. If it takes effect at all it must in its entirety, and the plaintiffs must hold their first judgment for the

balance unremitted. As that judgment no longer exists, there is no reason for holding that the remission of a part of it is equivalent to an adjudication against them. This assignment of errors is therefore not sustained." The two situations being analogous, the reasoning in that case applies to the question raised here. Upon the unrestricted granting of the petition for rehearing the whole case was re-opened and came up for consideration just as though no judgment had ever been entered and no opinion filed. The *remittitur* was no longer binding upon the defendant in error, and the Appellate Court was at liberty, if it found its first conclusion wrong, to affirm the judgment of the trial court in the full amount, or to again determine, if it saw fit, to make the affirmance of the judgment contingent upon the entering of a *remittitur* by defendant in error in such sum as it should specify.

There being no reversible error in the record the judgment of the Appellate Court is affirmed.

·  *Judgment affirmed.*

CARTWRIGHT, J., DUNN, C. J., and HAND, J., dissenting:

The plaintiff in error assigned errors upon the record in the Appellate Court, one of which was that the damages were excessive. The defendant in error confessed the error so assigned to the extent of $3500 and entered a *remittitur* for that amount. The plaintiff in error alleged that there still remained prejudicial error in the record and prayed for a rehearing, which was allowed, but on the rehearing the Appellate Court increased its judgment by the amount which had been remitted. In our opinion this was error. After the *remittitur,* by which the judgment was reduced to $6500, we do not think that the court could, on the consideration of alleged remaining errors, raise the judgment to $10,000, and we do not regard any rule governing a second trial of issues of fact as applicable to this case.