Torger Mithen, a minor, by John Alson his next friend, Appellee, v. Charles T. Jeffery and Harold Jeffery, Appellants.

### Gen. No. 17,376.

1. MASTER AND SERVANT—*failure to warn inexperienced employee.* In a personal injury action, where the jury find the ignorance and inexperience of the plaintiff, a minor, was such that he failed to appreciate the danger in oiling a machine as indicated by the fore-man, it was the duty of defendant to warn him of such danger, and failure to do so is negligence.

2. PLEADING—*need not prove each count.* In order to recover it is only necessary to prove one count in the declaration if that count is sufficient.

3. JURY—*questions permissible on voir dire examination.* In a personal injury action where a venireman discloses in answer to proper questions that he is an officer of an accident insurance company, it is not error to allow further questions to ascertain if he is interested in the casualty company conducting the defense.

4. DAMAGES—*when verdict not excessive.* In an action by a minor for the loss of an arm, a verdict for $15,000 does not, because of the amount, warrant the conclusion that it was the result of passion or prejudice.

GRIDLEY, P. J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 29, 1912. Rehearing denied December 12, 1912.

FRANK M. COX and R. J. FELLINGHAM, for appellants.

TINSMAN, RANKIN & NELTNOR and JOHNSON & BELASCO, for appellee; JOEL BAKER, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an action of trespass on the case for personal injuries received by Torger Mithen, a minor, hereinafter called plaintiff, while in the employ of Charles T. Jeffery and Harold Jeffery, hereinafter called defendants. The plaintiff lost his left arm. The jury returned a verdict for the plaintiff, assessing the damages at $15,000. Plaintiff remitted $5,000 and judgment was entered for $10,000, which defendants ask this court to reverse. Plaintiff was injured while oiling a milling machine in defendants' plant in Kenosha, Wisconsin. Photographs and portions of the machine, included as exhibits in the record, give a fairly clear indication of its character. Briefly described, the machine consisted of a shaft about eighteen inches long and one and one-half inches in diameter, upon which were cutting wheels six inches in diameter and about three-fourths of an inch across the face. On the face were cutting knives about three-fourths of an inch deep. The number of cutting wheels placed upon the shaft was changed according to the work to be done. Sometimes there was only one cutting wheel, but at the time of the accident there were four. These cutting wheels, revolving with the shaft, were used for cutting steel or other metals. Just above the revolving wheels was an arbor support, and the top of the wheels revolved towards this arbor with a speed of about thirty revolutions a minute. The tops of the wheels apparently came close to the arbor. Plaintiff's left hand was caught between the under side of the arbor support and the cutting wheel which was nearest the right end of the shaft as the plaintiff faced the machine. This wheel was about one and one-fourth inches from the right end of the shaft, and about four inches from the arbor support at the side. In this end

was a small hole running on a center pin attached to the body of the machine. Plaintiff was injured while attempting to oil this center pin.

The averments of negligence in the various counts of the declaration under which evidence was introduced are: 1, that the defendants by their foreman negligently ordered the plaintiff to oil said machine while in motion, and that he was injured while obeying said order; 2, that plaintiff was a minor and ignorant and inexperienced, whereby it became the duty of defendants to warn him of the danger of working upon the machine in its alleged defective condition; 3, that the milling machine which plaintiff was operating was out of order, in that the knives of the machine wabbled and the machine jerked and shook. To the averment that plaintiff was a minor, ignorant and inexperienced, and that therefore there was a duty upon defendants to warn him of the danger when they ordered him to oil the machine, which duty was not performed, the defendants' reply that the evidence shows that the plaintiff was of sufficient age and intelligence to know and appreciate the danger to which he was exposed, and he must therefore be held to have assumed the risk of such dangers if they were obvious or if he had equal means with his employer of knowing such danger. The evidence before the jury was that plaintiff was born in Norway, where he went to school and farmed, and had never worked there around machinery. He came to this country when seventeen years of age, worked on a farm in Wisconsin about a year, then at a lamp factory in Kenosha, Wisconsin, for five or six months, then went to work for the defendants and worked for them eleven or twelve days before the accident happened; that before he started to work for defendants he had had no experience with machinery and was then about eighteen and one-half years old. He was first placed to work by defendants on a small drill press, drilling small holes in small pieces of metal; then on vise filing gears, and worked

at that about four days, and was then placed
to work on the milling machines.   Plaintiff testifies
that before that time he had never seen that kind of a
machine.   He worked on two machines.   The machines
were in charge of a mechanic named Herstedt, who ad-
justed them, and all the plaintiff had to do was to
place the material in the machine and start it going.
Up to the morning of the accident he worked with
only one cutting wheel on the machine, but on that
morning Herstedt changed one of the two machines so
that instead of only one cutter on the shaft there were
four cutters, and also instead of light castings that
plaintiff had been milling he was given heavy steel
yokes to be milled.   Plaintiff worked on the machine
with four cutters from nine or ten o'clock until a lit-
tle after one o'clock, with the exception of the noon
hour.   At this time plaintiff noticed that the machine
was "chattering," making a shaking, grinding noise.
He spoke to a fellow workman about the matter, who
came and examined the machine.   This man said that
the center (referring to the center pin in the shaft)
was smoking, showing that it was hot, and he told the
plaintiff to report the matter to Mr. Pfau, the fore-
man.   Plaintiff did so and the foreman walked back
with him to the machine, looked at it, started it up and
took an oil can in his left hand and oiled it at the
point where the center pin and shaft connected, at
the same time telling plaintiff that it was necessary to
oil it while it was running, so as to get the oil in the
socket in the end of the shaft.   Then the foreman
went away.   Shortly after one o'clock the machine
started "chattering" again, and thereupon, as plain-
tiff testifies, "I took the oil can in my left hand, as the
foreman had showed me to, placed my hand in the
machine to oil the machine, and just the instant I did
that the machine jerked.   I oiled it where the center
and arbor are connected, where the foreman showed
me to oil it.   The machine chattered and jerked at
this end, and it got my hand and pulled it in over the

cutter, between the cutter and the main axle of the machine and cut it off.'' The testimony of the foreman concerning his directions to plaintiff was: "I told and showed plaintiff how to oil the machine at the center with the oil can when it became hot.'' Plaintiff says he had never oiled this machine at that place before.

From this evidence, which in the main was uncontradicted, the jury was asked to determine the fact concerning the ignorance and lack of experience of plaintiff. If the fact found by the jury was that his ignorance and inexperience were such that thereby he failed to appreciate the danger attending the operation of oiling the machine in the manner indicated by the foreman, then it follows that it was the duty of the defendants, through their foreman, to warn him of such danger, and the failure to do so is negligence. We see no good grounds for holding that the finding of the jury in this regard was unwarranted upon the evidence before it. It may be that plaintiff sufficiently understood and appreciated the fact that if his hand should be caught in the cutting wheel he would be hurt. The knowledge that sharp things will cut and hurt is acquired at a very early age; but that was not the danger involved here, but rather the danger incident to oiling the machine in the manner indicated by the foreman. The foreman was an adult man of experience with machinery. His experience had taught him just what to do and what not to do to escape injury while oiling the machine. The plaintiff did not have this experience. He was a young man with practically no opportunity to acquire the capacity for self-protection which ordinarily is acquired by one accustomed to working in and around machinery. The jury might well have considered him to have been a raw, green youth, possessed of a certain amount of knowledge acquired in school, but as ignorant as an infant of the dangers present when required to perform this new work. The situation was one wholly different

from anything which he had ever before met. Under such conditions we are of the opinion that the defendants clearly owed him the duty of warning, and in failing to do this were guilty of negligence.

We do not deem it necessary to discuss the question of the alleged defective machinery. "Plaintiff is not bound to prove each count of the declaration in order to entitle him to a verdict, and he may recover if one count is sufficient and the proof supports that count." Colesar v. Star Coal Co., 255 Ill. 532.

It is urged that reversible error was committed in certain questions put by the attorney for the plaintiff to the venireman, Edward D. Sweetland, on his *voir dire* examination, and in the ruling of the court denying motion of defendants' counsel to discharge the entire panel. Mr. Sweetland was asked: "What is your business?" and he replied "All kinds of insurance." Q. "Liability insurance?" A. "Yes, sir, I am secretary of the corporation." Q. "Do you know Mr. Jackson?" A. "No." Q. "Mr. Snow, here?" A. "No." Q. "The Travelers Insurance Company?" Mr. Cox: "I object to that." The Court: "I did not catch the question." Mr. Belasco: "I asked him if he knew anybody connected with the Travelers Insurance Company. He is in the same line of business." Court and counsel thereupon retired to the judge's chambers, and the attorney for the defendants moved to discharge the entire panel, which motion was overruled. The attorney for the plaintiff then asked the venireman: "Handling liability insurance you would come in contact with personal injury claims." A. "Our concern does but I do not. My work is fire losses." Q. "And you have never come in contact with personal injury claims in your experience?" A. "No." The venireman was then excused. It has been repeatedly held reversible error, where counsel for plaintiff improperly attempts to get before the jury the fact that a casualty company is conducting the defense. On the other hand there may arise a situa-

tion where the plaintiff would properly be entitled to know whether or not a prospective juror is interested financially or otherwise in the outcome of the case. It can be readily seen in the case at bar that if the venireman had answered that he was connected with the Travelers Insurance Company, and if it was in the knowledge of plaintiff's attorney that this company was conducting the defense, it would be of importance as affecting the judgment of plaintiff's counsel as to whether or not such venireman should be accepted by him as a juror. The venireman himself having disclosed in answer to proper questions that he was an officer of an accident insurance company, the questions then put to him might properly be made for the purpose of enabling counsel to exercise his right of peremptory challenge. We believe they were proper in this case, and therefore not ground for reversal. Aetitus v. Spring Valley Coal Co., 246 Ill. 32; Iroquois Furnace Co. v. McCrea, 191 Ill. 340.

Appellants' counsel also urge as reversible error the ruling of the court in denying a motion to strike out the answer made by plaintiff to a question referring to his conversation with Pfau, the defendants' foreman. The question put to plaintiff was. "Did he say anything about fixing the machine?" A. "Why he said he would fix it when I was through with that work; they were in a hurry for that work." It is argued with force that this answer placed before the jury a matter which was entirely incompetent under the pleadings, in that there was no liability claimed because of any promise to repair the machine. While we think the answer might well have been stricken out, still we do not believe that in this regard reversible error was committed.

It is also claimed that the damages awarded by the verdict were excessive and that this was not cured by the remittitur of $5,000, and the excessiveness of the verdict must have been the result of passion and prejudice on the part of the jury, or sympathy for

the plaintiff. There is nothing before this court upon which we can base any conclusion that the verdict was the result of passion and prejudice, except it should be the amount of the verdict. For a jury to award a young man $15,000 for the loss of an arm is not so extraordinary or unusual as to compel the conclusion that the jury was influenced by anything else than a desire to award what they thought adequate compensation for pain and suffering and the permanent character of the injury under the evidence. We cannot say that the amount of the verdict alone supports the contention of defendants' counsel in this regard.

Finding, as we do, that defendants were negligent as above indicated, and that there is no reversible error in the record, the judgment will be affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE GRIDLEY dissents.